Staples, J.,
delivered the opinion of the court.
The charter of the city of Richmond authorizes the city council to raise annually, by taxes and assessments, such sums of money as they shall deem necessary to defray the expenses of the same, and in such manner as they shall deem expedient, in accordance with the laws of the state and of the United States.
In the execution of the powers thus confided to them, the city council may grant licenses or refuse them. They may require taxes to he paid on such licenses to agents of insurance companies, and all business which cannot be reached by the ad valorem system. Acts of 1869-’70, page 138, secs. 69 and 70. In the case of Ould & Carrington v. City of Richmond, 23 Gratt. 464, this court construed these provisions as conferring upon the city council the general power of taxation, except only as it may be limited by the laws of the state or of the United States, and including all persons and subjects of taxation. It was also further held, that the mode of assessment adopted by the city council with reference to attorneys at law was sustained by the charter and hv the constitution.
The plan adopted by the city council in assessing *20 telegraph companies is substantially the same as that-pursued with reference to attorneys at law. They are divided into four classes, and required to pay a license-tax graduated by the character of the business done by the company. The plaintiffs are placed in the third class, and are subjected to a license tax of one hundred and twenty-five dollars. The authority of the city council in the premises, and the validity of the-assessment, must therefore be considered as adjudicated and settled by the decision of this court. It is said, however, that the ordinance of the city only applies, to “persons or firms,” and not to chartered companies. It is very true that the twelfth section speaks of “persons or firms” only, but the eighth section expressly mentions “telegraph companies;” and it is very clear-it was the intention to include all telegraph companies, whether incorporated or not. The sections construed together plainly show that, in using the words “persons or firms” in the city ordinance, the council designed to embrace chartered companies as well as individuals. And this is sanctioned by practice and the decisions of the courts. In Baltimore & Ohio R. R. Co. v. Gallahue’s adm’r, 12 Gratt. 655, 663, Judge Allen said: “ Corporations are to be deemed and taken as persons, when the circumstances in which they are placed are identical with those of natural persons expressly included in a statute. * * * ”
Another ground taken by the plaintiffs is, that the act of March 15, 1872, provides that but one license shall be required of a telegraph company, upon the-issuing of which, the company’s messages may be transmitted through any county or corporation of the-state; and that the city of Richmond has no power, in violation of this exclusive grant, to require another license and impose another tax upon the business of the company.
*21 It is very clear, however, that the act of March 15th, 1872, refers only to state taxation and revenue. The object of that act was, no doubt, to relieve telegraph companies from the payment of a tax for each office and place of business, and to authorize the transmission of messages throughout the state under one license, and upon the payment of a single tax. It was not intended to interfere with municipal corporations in the exercise of powers of taxation conferred by their charters, or to strip them of valuable revenues derived from companies and individuals carrying on business within the corporate limits, and under the protection of the corporate government. This subject was fully considered in the case of Humphreys &c. v. Norfolk Oily, decided by this court at the spring term 1874; and to that case reference is made. 25 Gratt. 97.
For these reasons the tax in this case must be held to be valid, so far as the constitution and laws of the state are involved.
The only question remaining for consideration is, whether the tax is in violation of any provision of the constitution of the United States, or of any rights and privileges conferred upon plaintiffs by act of congress.
It is insisted that the action of the city council in requiring the license, is repugnant to that clause of the constitution of the United States which gives to congress the power to regulate commerce among the ■states.
The argument of the learned counsel upon this point briefly stated' is, that commerce is not merely traffic; it is something more, it is intercourse; and intercourse includes all the means by which commerce is carried on among the several states: that telegraph communication is an important branch of commercial intercourse; and if Virginia may impose a tax upon *22 those companies, so may every other state penetrated' by their lines; and thus the whole system of telegraph communication may be destroyed by oppressive burdens in the form of taxation.
This proposition applies as well to states as to municipalities; and if the power of taxation is denied in one-ease it is in the other. The question is therefore a grave one, as well by reason of the principle as the-amount involved.
The power of taxation, as universally conceded, is inherent in every sovereignty, and no constitutional government can exist without it. It extends to every person, to every trade and occupation, and every species of property. It is as essential to the states as. to the Federal government. If it is important that the agencies of the Federal government shall be excepted from the taxing power of the states, it is equally necessary that those of the latter shall be-maintained in undiminished force and vigor. In Osborne v. Mobile, 16 Wall. U. S. R. 479, 481, Chief Justice Chase said: “It is as important to leave the rightful powers of taxation unimpaired in the states as to maintain the powers of the Federal government in their integrity.” The difficulty of drawing the line between the commercial power of the Union and the-taxing power of the states is universally conceded. Clearly no law of the states, much less the exercise of' this taxing power, ought to be declared invalid upon any mere speculative, indirect and contingent ground. The repugnancy to the constitution of the United States ought to be immediate, direct, and beyond all question.
If we assume that commerce means intercourse, as it clearly does, and that intercourse includes all the instrumentalities by which commerce is carried on *23 between the states, there is scarce an avocation in the state engaged in foreign trade and traffic which may not be brought within the influence of the constitutioual inhibition. It will be conceded that a state may tax a ship of one of its citizens engaged in the transportation of foreign merchandise, or passengers to and from the state; although it cannot tax the passengers or the merchandise. The reason is, that the ship is not commerce, but a mere instrument of commerce. Hays v. The Pacific Mail Steamship Co., 17 How. U. S. R. 596.
And so it has been held, that a license tax upon persons engaged in buying and selling foreign bills of exchange is not repugnant to the constitution of the United States. Nathan v. Louisiana, 8 How. U. S. R. 79. Such persons are not engaged in commerce, but simply in supplying an instrument of commerce. The court say “ they are less connected with it than the shipbuilder, without whose labor foreign commerce cannot be carried on; and yet the business of ship-building may be taxed as the exercise of any other mechanical art. Ho one can claim an exemption from a general tax on his business within the state on the ground that the products sold may be used in commerce.” In Paul v. Virginia, 8 Wall. U. S. R. 168, it was decided that the issuing of a policy of insurance is not a transaction of commerce within the meaning of the constitution, though the parties be domiciled in different states. The court say these contracts are not articles of commerce in any proper meaning of the word. They are not subjects of trade and barter offered in the market, as something having an existence and value independent of the parties to them. They are not commodities to be shipped or forwarded from one state to another, and then put up for sale.
*24 The learned counsel for the plaintiffs cites the case of Crandall v. Nevada, 6 Wall. U. S. R. 35, in which the Supreme court held a statute of Nevada unconstitutional which imposed a tax upon every passenger leaving the state. This, however, was not upon the ground that such a tax is “a regulation of commerce, or even repugnant to any express provision of the eonstition, but upon the broad principle that the Federal government had the right to call to the capital of the Union any and all of its citizens to aid in the military or civil service of the country; and every citizen from the most remote states or territories is entitled to free access to all the great departments of the government, executive, legislative and judicial; and this right cannot be made dependent upon the pleasure of a state over whose territory they must pass in the exercise of such right. And if the principle should be admitted at all, it might be carried to the extent of an entire prohibition.” An attempt was made by the counsel, who argued the case, to show that the tax was upon the business of the carrier who transports the passengers, graduated by the amount of the business done. The court say, however, it was plainly a tax upon the passenger, and the officers and agents of the companies were mere collectors of the tax. It was this feature, and this alone, which rendered the tax inconsistent with the rights belonging to citizens of the different states, and with the objects the Union was intended to attain.
The case of “ Slate Freight Tax,” 15 Wall. U. S. R. 285, is much relied on by the counsel for the plaintiffs. There the Supreme court held, that a statute imposing a tax upon freight taken up within the state and carried out of it, or taken up without and brought within the state, is repugnant to the clause of the constitution *25 .giving to congress the power to regulate commerce. The reason assigned is, that the tax was not upon the companies nor their franchises, property or business, but upon the freight, or upon the consignor or consignee, and was so intended, and the company required to pay a mere toll-gatherer. And inasmuch as the transportation of freight for the purpose of exchange or sale is a constituent of commerce, a tax upon freight is necessarily a regulation of commerce.
In the case of “ State Tax on Railway Gross Receipts reported also in 15 Wall. U. S. R. 284, the Supreme court sustains a Pennsylvania statute imposing a tax upon the gross receipts of railroad companies, although these receipts are made up in part of freights received for transportation of merchandise to and from the state into other states. This case is plainly distinguishable from the one last cited. In the first, as has been seen, the tax was upon transportation,-and the railroad company a mere agency for its collection. In the second, the tax was upon the company, measured in amount by the extent of its business, or the degree to which its franchise was exercised. It was conceded that the ultimate effect of the tax would be to increase the cost of transportation, and therefore to affect commerce itself. Nevertheless, it was not a tax upon commerce, any more than a tax upon a railroad or stage coach is a tax upon transportation, or a tax upon attorneys constitutes a tax upon clients.
The court further say, in effect, it is not everything that affects commerce that amounts to a regulation of it within the meaning of the constitution. The states have authority to tax the estate, real and personal, of all their corporations, including carrying companies, precisely as they may tax similar property when •belonging to natural persons. Such taxation may be *26 laid on valuation or may be an excise; it may be a graduated contribution, proportioned to the value of' the privileges granted, or to the extent of their exercise, or to the results of such exercise. Such a power is essential to the healthy exercise of the state governments; and the Federal constitution ought not to beso construed as to impair, much less to destroy, anything-that is necessary to their efficient exercise.
These cases show the great difficulty encountered by the Supreme court of the United States in dealing with this perplexing subject. They further show, I think, the anxiety of that court to preserve unimpaired the taxing powers of the states, so far as it can be done consistently with the paramount obligations of tbe Federal constitution. And although these decisions cannot perhaps be always harmonized, and the learned judges have been unanimous in but few of' them, yet they certainly affirm the proposition that it is competent for a state to impose a tax upon individuals or corporations within its territory; and such tax, if it does not discriminate against non-residents or the products of other states, may be upon the property, or the franchises, or the business, of the individual or corporation; and its validity is not at all affected by the consideration that the party is engaged in foreign as well as domestic trade and traffic. Society for Savings v. Coile, 6 Wall U. S. R. 594; Woodruff v. Parham, 8 Wall. U. S. R. 123; Hinson v. Lott, Ibid. 148.
In Hinson v. Lott, 8 Wall. U. S. R. 148, the Supreme-court sustained a law of Alabama requiring every dealer in spiritous liquors introducing liquor into the state for sale to pay a tax per gallon before offering the same for sale within the limits of the state. Mr., Justice Miller in delivering the opinion of the court. *27 said: “If this was the only tax it would constitute an unjust discrimination against the products of other states in favor of those of Alabama, and might be so laid as to amount to an absolute prohibition; but it appeared there was another tax of like amount upon all spirits manufactured in the state. Inasmuch, therefore, as the law merely subjected foreign articles to the same rate of taxation as applied to domestic, it was not an attempt to regulate commerce, but an appropriate and legitimate exercise of the taxing power of the states.”
These decisions of the Supreme court have a direct application to the ease under consideration. In the first place, it will be observed that the ordinance of the City of Richmond makes no discrimination in favor of or against any express company. The tax is alike upon all, graduated by the extent of the business. In the next place, the tax is not upon the telegraph message or communication, but upon the company, measured by the business in the corporate limits. The effect of the tax may be to increase to some extent the expense of telegraph communication. It is very probable that the rates of telegraphing are established by general arrangement among all the companies, whether incorporated here or abroad, and it may be that these rates are fixed with reference to state and municipal taxation as to other necessary expenses. But the same thing is true as respects railroad companies engaged in the transportation of passengers and freight and domestic goods. A tax upon them is indirectly a tax upon such transportation. But no one ever questioned the constitutional power of a state to lay a tax upon its railroad companies.
The same principle applies to express companies incorporated under the laws of one state, establishing *28 its offices in other states, and engaged in the transmission of matter internal and external.
In Osborne v. Mobile, 16 Wall. U. S. R. 479, the Supreme court say, although the ultimate effect of the tax may be to increase the cost of transportation, it is within the general authority of the state to tax persons, property, business or occupations within the state.
The mistake made in all this class of cases is in failing to distinguish between commerce itself and what may be termed a mere instrument of commerce. Telegraphic communication is not commerce; “it is not a subject of trade and barter offered in market as something having an existence and value independent of the parties to them.” It is not an intercourse— though it may be, and doubtless is, an important and valuable instrument or agency by which intereouse is carried on between the different parts of the country. It cannot be said, however, that this intercourse is purely of a national character, affecting the commercial interests of all the states, and therefore requiring exclusive legislation by Congress. Conceding that Congress may regulate the telegraphic business of the country, it has not done so; and in the absence of any such legislation on the subject, there is no valid objection to a system of state taxation upon these companies in return for the protection they receive. They are incorporated under state laws, controlled by state regulations, and protected by state authority. It is true they are engaged in transmitting government messages at rates fixed by the postmaster general; but the railroads perform duties of a similar character in carrying the mail; so also the stage coaches. They are all subjects of state regulation, and are therefore necessarily liable to state taxation. The contract with the government for the transmission of its messages *29 is in no just sense a regulation of commerce. These ° terms, “to regulate commerce,” are well understood to mean the power to prescribe the rules by which commerce is to be governed. Hay on Com. § 1061. The very fact that Congress has undertaken neither to exclude state taxation, or to prescribe .any regulations for the various telegraph companies, indicates very clearly, that the whole subject was intended to be , . , . left to the states under whose laws they are incorporated.
Another ground taken by the plaintiff is, that the company is an important agency of the Federal government in the management of public affairs, and as such no state or municipal corporation is authorized to impose a license tax upon its business, whereby the operations of the government may be impaired or obstructed. This view is based mainly upon the provisions of the act of congress of the 24th July, 1866. This act authorizes any telegraph company, organized under the laws of any state, to construct lines of telegraph over any portion of the public domain, along any of the military or post roads, and across any of the navigable waters of the United States.
Authority is also given them to take from the public lands any material needful in the construction and operation of their lines of telegraph, and also to appropriate any portion of the public lands for their stations, not exceeding forty acres for each station.
The act further provides, that communications of the government, its officers and agents, shall have priority over all others iu their transmission over the lines, at rates fixed by the postmaster general. The provisions of this act were accepted by the plaintiffs, and the terms of government communication fixed accordingly by the postmaster general, and agreed to by the com *30 pany. It is argued, that if the state or any of its municipalities may impose a tax upon, or require a license of this company, they may impose it to any extent, and the effect may be to deprive the company altogether of the power to serve the government, or, at any rate, to impair its efficiency.
It is very clear that the states are prohibited from taxing either the property of the Federal government or the instrumentalities by which its powers are carried into execution. This doctrine is well settled, and no one doubts its application to public corporations or other agencies created by the Federal government for carrying into execution national objects and purposes. But none of the cases have gone so far as to affirm, that because the Federal government enters into a contract with a corporation or a natural person to perform certain services this operates as an exemption from all state taxation. Gan it be that a railroad company by entering into an arrangement with the postmaster general to carry the mails can escape the payment of its just public dues upon the pretext that its capacity to serve the Federal government may be thereby impaired. Chief Justice Marshall, in Osborne v. United States Bank, 9 Wheat. R. 738-860, has given a complete answer to that question. In that case it was argued, that the tax imposed upon the Bank of the United States by the legislature was constitutional, because the bank was established for private benefit, and waB founded upon contract between individuals having private trade and private interest for its great and principal object. The chief justice said if these premises were true, the conclusion would then be inevitable. A private corporation engaged in its own business with its own views would certainly be subject to the taxing power of the state, as any individual *31 would be, and the casual circumstance of its being employed by the government in the transaction of its fiscal affairs would no more exempt its private business from the operation of that power than it would exempt the private business of any individual employed . 1 t> , • , . m the same manner. ±>ut the premises are not true, The bank is a public corporation, created for public and national purposes. It is not an instrument which _ the government found ready made, and has supposed to be adapted to its purposes, but one which was created in the form in which it now appears, for national purposes only.
The very reverse of all this is the status of this company. It was not created by the Federal government. It was not organized under any act of Congress, but under the laws of the state of New York. It is a private corporation, created for individual benefit and for the benefit of the private stockholders, carrying on business here under the authority of Virginia statutes, and protected in its franchises and the enjoyment of its property by state laws and the police power of the city government. The Federal government has granted it certain privileges in consideration of the performance of certain services at certaiu specified rates of compensation. But the government has no interest in it and no concern with it, any further than the performance of these services. So long as these are not interfered with by the regulations of the states, it is no concern of the Federal government whether a tax is imposed at all, or whether it is upon the property or the franchise, or the business of the company. It is not pretended, there is not even a suggestion, that the tax prevents the transmission of the government messages, or that it impairs in the slightest degree, the capacity of the company for the *32 fulfillment of its obligations. Exemption from all state or municipal taxation might with the same pro- - priety be claimed by all railroad companies, express companies, and others engaged in the transportation of mail matter, upon the ground that such taxation may tend to prevent the performance of the contract,, or at least to impair the efficiency of those agencies in the discharge of their duties.
The decisions of the Supreme court of the United-States do not give the least countenance to any such, pretension. They establish the contrary doctrine. One of these, the ease of National Bank v. Commonwealth, 9 Wall. U. S. R. 353, will show the manifest disinclination of the court to extend this doctrine of exemption from state taxation.
In that case it was conceded that the Legislature of Kentucky might tax the stockholders upon the shares held by them in the national banks; but it was insisted that so much of the act as required the banks to pay such tax was invalid, because the banks, being instrumentalities of the Federal government, are beyond the-reach of state legislation. This view, however, did not prevail. The Supreme court declared that the-doctrine of exemption of Federal agencies from state taxation had its just limitation, a limitation growing out of the -necessity in which it is founded. This limitation is, that these agencies are only exempted from state legislation, so far as that legislation may interfere with or impair their efficiency in performing the functions by which they are designed to serve the Federal government. Any other rule would convert a principle founded alone in the necessity of securing to the .government the means of exercising its legitimate powers, into an unauthorized and unjustifiable invasion of the rights of the states. The banks are subject to- *33 the laws of the states, aud are governed in their daily-course of business far more by the laws of the state than of the nation. Their contracts are governed and construed by state laws. Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts are all based on state laws. It is only when the state law incapacitates the banks from discharging their duties to the government that it becomes unconstitutional. We do not perceive the remotest probability of this in their being required to pay the tax which their stockholders owe to the state for the shares of the capital stock when the laws of the Federal government authorize the same.
In Thomson v. Pacific Railroad, 9 Wall. U. S. R. 579, the same doctrines are still more strongly stated. In that case the question was as to the validity of a tax imposed by the legislature of Kansas upon the railroad and telegraph property of the Union Pacific Railway Company. Exemption from this taxation was claimed upon the ground, that although the company was incorporated under the laws of Kansas, congress had granted it lands and subsidies to a large amount, in consideration of which the company had executed a mortgage upon its property for the payment of five per cent, of its net gains, and had agreed to render services also in the transmission of messages, in the transportation of mails, troops, munitions, and other property at reasonable rates of compensation : and it was insisted that the effect of the tax would be to impede and embarrass the company in the performance of these services as an agency of the government. Chief Justice Chase, in delivering the opinion of the court, dwelt at some length upon the distinction between a corporation created by the Federal government for national purposes, and corporations deriving their existence *34 and exercising their franchises under authority of state laws, but employed by the national government for certain duties and services. As to the latter, while congre8S may exempt them from any state taxation, which will really prevent or impede such services, yet in the absence of legislation by congress to indicate ^iat exemption is deemed essential to the performance of the governmental services, it cannot be claimed upon the mere ground that the corporation is employed as an agency of the government.
It is true that the tax in this case was upon the property of the railroad company; and the learned counsel seems to suppose there is a material distinction between such a tax and a tax upon the business of a corporation. But the reasoning of the court does not justify any such distinction. - It applies equally to both forms of taxation. Indeed, Chief Justice Chase expressly says: “JSro one questions that the power to tax all property, business and persons within their respetive limits, is original in the states, and has never been surrendered. It cannot be so used as to defeat or hinder the operations of the national government; but it will be safe to conclude in general in reference to persons and state corporations employed in government service, that where congress has not interfered to protect their property from state taxation, such taxation is not obnoxious to the objection suggested.” These observations apply as strongly to a tax upon business as a tax upon property. Indeed there is no valid distinction between the two, so far as the principles of this case are concerned. The cases do recognize a distinction between taxation of the property belonging to a private corporation employed by the general government and taxation of the instrumentalities or means of the government .in the possession *35 ■of such corporation. The state may tax a banking institution, but it cannot tax the currency or the government bonds belonging to such bank. It may tax the railroad, but not the mail or the munitions or other property of the government. It may tax the contractor with the government, though not the contract. Such tax may be upon the property of the corporation, or it may be graduated by the amount of its business. It is no concern of the Federal government, provided the tax is not prohibitory, or, at least, does not impair the efficiency of the corporation in the fulfillment of its contract with the government. Indeed a tax upon business in many instances is the only just and practicable mode of assessment. Chartered companies and individuals may carry on business to the amount of thousands of dollars without owning property, real or personal, of any conceivable value. If, whenever they happen to be employed in the service of the government, they are to be exempt from all those burdens which attach to all other persons, it is obvious that both states and cities will be depiived of most valuable subjects and sources of taxation. It is impossible to foresee the mischiefs that will arise from such a limitation upon the powers of the states. We see nothing in the constitution of the United States, or in the decisions of the Supreme Court, warranting such a conclusion.
Judgment aeeirmed.