THE WESTERN UNION TELEGRAPH CO. v. THE STATE OF TEXAS.

Case No. 4330.)

1. OCCUPATION TAX.— Though telegraphic companies may be subject to congressional regulation, they are also subject to pay occupation taxes to the state; at least until congress shall otherwise provide.

2. OCCUPATION TAX — INTER-STATE COMMERCE.— An occupation tax imposed on a telegraph company, which graduates the tax according to the business done, regardless of a distinction between business done wholly within the state and business done in part without the state, is free from the objection that it regulates or obstructs interstate commerce.

3. INTEREST — TAXES.— The state cannot recover interest on taxes, payment of which has been deferred, unless the statute authorizes interest on such taxes.

APPEAL from Travis. Tried below before the Hon. A. S. Walker.

The opinion states the case.

*Walton, Green & Hill,* for appellants.— The court erred in not rendering judgment for defendant on the grounds set forth in subdivisions 1, 2, 3, etc., of its answer; and in rendering judgment for plaintiff on the facts found.

Defendant pleaded as follows:

(2) That the law sought to be enforced, and on which suit is based, is in conflict with, and in violation of, the constitution and laws of the United States, and null and void; and

(3) That the same is an attempted interference with commerce between the state of Texas and the other states and portions of the United States, in so far as the same is, or is attempted to be made, applicable to telegraph messages transmitted by defendant over its lines; that defendant's lines for said business extend beyond the limits of the state of Texas, and into all the other states, and into the territories of the United States and to the seat of government of the United States, and constitutes a necessary and convenient medium of communication and agency for the commercial intercourse between points within said state of Texas and said other states, districts and territories. As to construction of the power of congress to regulate inter-state commerce, see Const. U. S., art. I, sec. 8, par. 3; Story on Const., § 1061; Gibbons v. Ogden, 9 Wheat., 1 (S. C., 5 U. S. Cond., 568). As to whether telegraphic messages are within the scope of this power, see Pensacola Tel. Co. v. W. U. Tel. Co., 96 U. S., 1; S. C. in Circuit Ct., 2 Woods, 646; W. U. Tel. Co. v. Atlantic & Pac. States Tel. Co., 5 Nev., 102 (S. C., Allen's Tel. Co., 428). As to extent to which state laws affecting inter-state commerce are prohibited or permitted, see State Freight Tax Case, 15 Wall., 271; State Tax on Railway Gross Receipts, id., 284 (Reading Railway Co. v. Pennsylvania); Welton v. Missouri, 91 U. S., 275; Railroad Co. v. Husen, 95 id., 465; Crandall v. Nevada (Special Opinion of C. J. and Clifford, J.), 6 Wall., 49; R. S., art. 2972; Cooley on Tax., 13, 14; Shaw v. Pecket, 26 Vt., 482; Haskell v. Bartlett, 31 Cal., 281.

*McLeary*, Attorney General, *E. T. Moore*, County Attorney, and *D. W. Doom*, for the state.

Gould, Associate Justice.— This is a suit brought in the district court of Travis county, by the state against appellants, for taxes alleged to be due for the quarter years, October, November and December, 1879, January,

February and March and April, May and June, 1880, and to compel a report and compliance by defendant with the terms of article 4665 of the Revised Statutes of Texas, where it is provided that "There shall be levied on and collected from every person, firm, company or association of persons pursuing any of the following named occupations, an annual tax (except when herein otherwise provided) on every such occupation or separate establishment, as follows: . . . From every chartered telegraph company doing business within this state, there shall be collected one cent for every full-rate message, and one-half that for every message less than a full-rate message sent; this tax to be paid quarterly to the comptroller, on the sworn statement of the chief manager of said company or companies, who shall keep a record of such messages."

Defendant answered by demurrer and general denial, and pleaded that the law imposing the tax was void under the state and federal constitutions and acts of congress. The case was tried by the court March 11, 1881, resulting in an order of court requiring defendant to file a sworn statement of the number of messages sent during the quarters named, and judgment against the defendant for the taxes thereon, with interest in the sum of $2,305.91. Defendant appealed. The court filed statement of conclusions of fact and law.

From these conclusions of fact it appears that the appellant was incorporated, did business as a chartered telegraph company in the state, its lines extending to nearly all the states of the Union and to Washington city. The court finds the number of full-rate and half-rate messages sent within the period stated in the petition, and states that this number "includes messages sent from Western Union telegraph offices within Texas to points within the United States, both within and out of Texas, and part of which related to commerce between Texas and other states of the Union."

The court also found that the number of messages above set forth and on which the amount of taxes found due was based, included messages (the number of which was not shown) sent from the government officers and agents of the United States in Texas to other officers, agents or departments of said United States government.  That a large proportion of messages sent belonged to the classes above mentioned.  That Gen. B. C. Ludlow, collector of internal revenue, third district, used the company as means of communication with the government and with other officers; used it every week, at special rates fixed by the postoffice department.

It was also pleaded by defendant, and found by the court: That on June 12, 1867, the defendant, in pursuance of an act of congress of the United States, entitled " An act to aid in the construction of telegraph lines, and to secure to the government the use of the same for postal, military and other purposes, approved July 24, 1866," filed in the office of the postmaster general of the United States the full and proper acceptance of defendant of the terms of said act.  That the rates for United States government messages on defendant's lines had been fixed by the postoffice department at one cent per word for each five hundred miles of transmission.

Also, that the United States government has in Texas a line of telegraph, called the Military Telegraph, owned by the government, and the lines of defendant connect with and are used in transmission of messages by the government of the United States and its officers, in connection with the Military Telegraph lines, and messages so transmitted (number not shown) are included in the number on which the judgment of court below is based.

The constitution of this state authorizes the legislature to " impose occupation taxes, both upon natural persons and upon corporations, other than municipal, doing any business in this state; " and although telegraph

companies may be subject to congressional regulation, they are also subject to pay legitimate occupation taxes to the state, at least until congress shall otherwise provide. The occupation tax in this case is proportioned to the number of messages sent, and seems to us designed to graduate the burden according to the amount of business done, and on principle to be free from objection as obstructing or regulating inter-state commerce. Such an occupation tax, proportioned to the business done, regardless of any distinction between business done wholly within the state and business done in part without the state, conforms to the rule recognized by the supreme court of the United States in attempting to mark out the boundaries of legitimate state taxation on the one side, and a regulation of inter-state commerce on the other. Case of the State Freight Tax, 15 Wall., 232; State Tax on R'y Gross Recepts, id., 285; Osborne v. Mobile, 16 Wall., 479. See also Western Union Tel. Co. v. City of Richmond, 26 Gratt., 1; Same v. Mayer, 28 Ohio St., 523.

In the Freight Tax case, the tax was regarded, not as a tax on the business or franchise, but as a tax on the thing carried, the burden falling on the consignor or consignee. Here the tax is on the occupation, not on the transportation of an article which is a subject of commerce; and although it may, like a tax on gross receipts, increase the expense of telegraphic communication, the burden falls directly on the company, and the burden on the senders of messages is not affected otherwise than it would necessarily be by any species of taxation on the occupation or business of the country.

But it is not designed to attempt a review of the cases or a discussion of the subject. Referring to the authorities cited above, and especially to the opinion in Western U. Tel. Co. v. City of Richmond, *supra*, we content ourselves with announcing our conclusion, that the tax in question is not invalid as a regulation of inter-state com-

merce, nor as a tax affecting government agencies or business. On the latter point, see Thompson *v.* R. R. Co., 9 Wall., 591; and Nat'l Bank *v.* Commonwealth, id., 353.

The objection that the tax violates the law of uniformity as prescribed by the constitution of the state is not regarded by us as tenable, or as requiring further notice than a reference to previous decisions. Tex. B. & I. Co. *v.* State, 42 Tex., 639.

But the court gave judgment for interest on the taxes from the 1st of January of each year after they fell due.

The rule is said to be that, "Where action is given for taxes, interest is not recoverable unless the statute gives it." Cooley on Taxation, p. 300, note 4; also id., pp. 13, 14; Danforth *v.* Williams, 9 Mass., 324; Show *v.* Pickett, 26 Vt., 482; Heard *v.* City of Galveston, Galv. term, 1881.

Until the legislative will has been expressed that the burden on the tax-payer shall be thus increased, interest should not be allowed. Taxes are distinguishable from ordinary debts, bearing interest.

The judgment will be reformed in so far as it allows interest, but in other respects it is affirmed.

REFORMED AND AFFIRMED.

[Opinion delivered June 14, 1881.]