## Richmond.

### CITY OF LYNCHBURG v. N. & W. R. R. Co.

#### FEBRUARY 19th, 1885.

1. MUNICIPAL CORPORATIONS—*Powers of taxation.*—Every grant of the power of taxation to a municipal, or other subordinate body, must be strictly construed. And municipal officers must show, in the words of the charter, a warrant for whatsoever authority they assume to exercise.

2. IDEM—*Idem.*—Section 5, of charter of city of Lynchburg, grants authority to impose a license tax upon persons engaged in certain enumerated callings, and "upon any other person or employment, which it may deem proper, whether such person or employment be herein specially enumerated or not," does not empower the city to impose such tax upon a railroad corporation; which is neither a person nor an employment, within the ordinary acceptation of those words.

3. CONSTRUCTION—*Rule of ejusdem generis.*—When a particular class of persons or things is spoken of in a statute, and general words follow, the class first mentioned must be taken as the most comprehensive, and the general words treated as referring to matters *ejusdem generis* with such class, the effect of general words when they follow particular words being thus restricted.

Error to judgment of corporation court of city of Lynchburg, rendered September 8, 1884, in an action of *assumpsit* wherein the Norfolk & Western Railroad Company was plaintiff, and said city was defendant.

The city, under section 5 of its charter (Acts 1879–80, pages 109–10), imposed a specific license tax of $1,000 on the said company. The latter brought this action to recover the amount which had been paid under protest. The corporation court gave

judgment in favor of the plaintiff, and the defendant was allowed a writ of error and *supersedeas* by one of the judges of this court.

*Kean & Kean*, for the plaintiff in error.

By reference to the existing charter of the said city (Acts 1879–80, pages 98 to 113), under which the proceedings complained of were had, it will be seen that by chapter 8, sections 3, 4 and 5 of said chapter (pages 109–10), the council of the said city is clothed with very large and comprehensive powers of taxation, "for the execution of its powers and duties under this charter."

By section 3, power is given to tax every imaginable species of property, real and personal, including choses in action, capital employed in business, stocks in incorporated companies, incomes, interest on money, and dividends.

By section 4, power is given to lay a poll-tax of fifty cents per head on male residents of the city over twenty-one years of age.

By section 5, power is given to impose a tax "on merchants, commission merchants, auctioneers, manufacturers, traders, professional men, as lawyers, physicians, dentists, on brokers, keepers of ordinaries, hotel keepers, boarding-house keepers, keepers of drinking or eating houses, keepers of livery stables, daguerrean artists of all kinds, agents of all kinds (including the agents of foreign insurance companies whose principal office is not in the city), sellers of wine and other liquors, venders of quack medicines, public theatrical or other performances or shows, keepers of billiard tables, ten-pin alleys, pistol galleries, hawkers, pedlars, sample merchants, and upon any other person or employment which it (the council) may deem proper, whether such person or employment be herein specially enumerated or not, and whether any tax be imposed thereon by the State or not. As to all such persons or employments, the council may

lay a direct tax, or may require a license therefor under such regulations as it may prescribe, and levy a tax thereon."

When, after the enumeration of the various subjects which might be reached by direct or license taxes, the general assembly added the comprehensive words: "and upon any other person or employment which it may deem proper," &c., the added phrase, "which it may deem proper," &c., shows that the legislative purpose was to *enlarge* the grant by making the judgment and discretion of the council a legislative body of large and varied powers,—the only limitation, except those expressly stated.

The decision of the judge of the corporation court went wholly upon the ground that, where a particular class of things is spoken of in the statute, and afterwards general words follow, the class first mentioned is to be taken as the most comprehensive, and the general words treated as referring to matters *ejusdem generis* with such class; citing Broom's Maxims (651); Porter's Dwarris, 236; 2 B. & Adol. (22 E. C. L.), 592 (249); 14 E. C. L. 52; 49 Mo. 559.

That railroads are not mentioned at all; that they would have constituted, or might have constituted, a much more important subject of taxation than hawkers, pedlars, or shows, venders of patent medicines, or ten-pin alleys, and therefore it is not to be presumed or considered that the legislature intended that the general and comprehensive words were intended to embrace them, or any subject not of the same nature, with some one or more of the enumerated classes.

This reasoning and the conclusion based upon it are unsound. Nobody questions the general truth of the rule relied on, when it is justly applicable, as in cases where the enumerated subjects themselves are of an analogous nature. These rules of interpretation have been established as means to aid in *ascertaining* the *intention*. They do not control the intention. The practical difficulty is in correctly applying them.

If the legislature had contented itself with the enumeration

in section 5, followed by words and "any other person or employment," there might have been some show of force in the application of the rule of construction which was applied by the court below. Even this may well be doubted in its application to city charters, where the powers are exercised by councils. In a charter, which after an enumeration, had the words "all other persons exercising within the city any profession, trade or calling, or business of any nature whatsoever," a city may tax chartered banks. *Macon* v. *Macon Savings Bank*, 60 Ga. 133.

And a city having authority to license, tax and regulate "merchants, &c.," may impose an *ad valorem* tax on the gross receipts of an insurance company. *Am. U. Ex. Co.* v. *St. Joseph*, 66 Mo. 675.

But the legislature did not stop with those words, and as if sensible that to do so might give occasion for an unreasonable, and not intended restriction on the taxing power of the city, the charter goes on to qualify them by terms which enlarge them still further, by showing that a legislative discretion was intended to be vested in the council by the words, "*which it* (the council) *may deem proper.*" Not content with this phrase, which, standing alone, might possibly be construed as importing only a discretion to tax such subjects analogous to those enumerated, as the council might see fit to select, the law proceeds with words unmistakably enlarging their effect and meaning, and which could have been used for no other purpose, "whether such person or employment be herein specially enumerated or not." And not content even with this, but apparently to take away any doubt which might possibly be raised, on any ground whatever, and to make the taxing power co-extensive with that of the State herself, as to that general class of subjects which cannot be reached by the *ad valorem* system, it adds the further enlarging words, "whether any tax be imposed thereon by the State or not."

Thus by carefully selected language, the rule of *ejusdem gen-*

*eris* is excluded, and the *intention* of the legislature (which is the real thing to be ascertained) is manifested. The power to tax by way of license or direct tax, all and every person or employment, in said city, is given in the amplest manner.

(1.) A moderate and reasonable tax on the business done by the railroad company at Lynchburg is reasonable and just.

The company has large and valuable properties there, and as a great carrier of merchandise has vast values, for which it is responsible, constantly under the protection of the city police and the fire department. These considerations of natural justice were strongly dwelt on by this court in *Humphries* v. *The City of Norfolk*, 25 Gratt. 102–3. In that case the foreign insurance companies were resisting municipal taxation on grounds in some respects analogous to those urged here; such as want of power under the charter of the city; implied exemption from the manner of taxation by the State, &c. (see pages 100–101); all of which were overruled by the court. At the place first above cited, this court said:

"They" (the insurance companies) "derive their chief revenue from the towns; within whose limits the principal offices and agencies are located; the lives and buildings they insure are under the protection of the municipal authorities: *the fire departments which secure dwellings from conflagration*; the police which guard the life of the citizens against violence, and all the varied and expensive sanitary regulations which promote health, * * operate undoubtedly to the advantage of the insurance companies. Are they to enjoy the benefits of good government without contributing in any degree to its expense? Are they alone to be exempt from those common burdens which devolve upon all the inhabitants of towns and cities?"

This court unanimously held the license-tax imposed by Norfolk on the foreign insurance companies having agencies in that city, valid and just.

(2.) It is urged in argument, and to some extent relied on by the court, that "the power to tax is the power to destroy;"

that the power to tax to destroy the railroad property is the power to destroy the commerce of the State. The answer to this is manifold.

(*a*.) The interest of the railroad companies and of the cities to or through which their roads pass are largely identical. Prosperity, growth, and the development of trade and wealth in the cities means increased traffic to the roads, and reciprocally the larger the volume of traffic conducted or induced by the railroads at a city the greater the benefit to the city.

(*b*.) If the power should be abused by oppressive taxation the evil could and would be corrected by the voters, who would choose a council of more enlightened and just opinions.

(*c*.) All municipal powers are under the direct and constant control of the legislature. A power which, should it be abused, would be promptly limited or taken away.

(*d*.) This court has furnished a direct answer to this point in *City of Richmond* v. *Danville R. R. Co.*, 21 Gratt. 615–16. After quoting Ch. J. Marshall (4 Pet. 514) to the effect that no argument against the power of taxation can be drawn from its liability to abuse. this court said: "The power of taxation itself and the right of eminent domain may be perverted to purposes of injustice, but this *possible abuse* furnishes no argument against their exercise within reasonable limits and with a due regard to private rights."

(3.) Great judges have several times in recent years found occasion to warn the profession against a tendency to impute a "public policy" to the State, which has not been declared by the constitution, the statute law, or the decisions of the highest courts. Story J., in the Girard Will Case, 2 How. 198, often approved of in this court; Chase Ch. J., 5 Wall. 469; Field J., 5 Wall. 111–12.

There is no statute law of this State, nor any known decision which indicates, much less establishes as a public policy in Virginia, looking to the exemption of railroad companies from taxation, State or municipal. On the contrary, in a few of the

earliest charters granted, such exemption was expressly made, by way of encouragement to infant enterprise; in the later ones it has been uniformly withheld, and in some of those which originally contained it the legislature has made its renunciation the condition on which amended charters sought by the company have been granted.

(4.) Exemption from taxation cannot be implied. As the power to tax must be shown to exist—and is a sovereign power—so whenever it does exist, exemptions must be shown clearly and unequivocally to have been conferred by the grant of the sovereign authority. The claim of *exemption* is to be as strictly construed as the imposition of the tax. *Westchester Fire Ins. Co.* v. *Davenport*, 91 N. Y. 574; *O. & A. R. R. Co.* v. *Alexandria*, 17 Gratt. 184; *R. R. Co.* v. *Commissioners*, 103 U. S.; 1 Pierce on Railroads, 478–9; *R. R. Co's.* v. *Gaines*, 97 U. S. 697; *Richmond* v. *Danville R. R. Co.*, 21 Gratt. 613–14.

And this case shows further that an express exemption from State taxation carries no implication that exemption from municipal taxation was intended. See also *Humphries* v. *Norfolk*, 25 Gratt. 100; *West'n U. Tel. Co.* v. *Richmond*, 26 Gratt. 1 (page 22); *Wiggins Ferry Co.* v. *East St. Louis*, 107 U. S. 365, and a multitude of cases collected—3. Am. and Eng. Corp. Cas. 414.

(5.) Effort is made to found an argument against the power of the city to assess this tax on the descriptive words of the charter, "persons or employments." It is said that railroad companies are not "persons" and that their business is not an "employment" in the sense of the law.

The reply to this is also manifold:

(*a.*) The Code of 1873, chapter 15, section 9, on the construction of statutes, "provides (page 195), the word 'person' may extend and be applied to bodies corporate and politic as well as individuals."

(*b.*) This provision has been construed by this court, "When the word 'person' is used in a statute, corporations as well as natural persons are included for civil purposes." *B. &*

*O. R. R. Co.* v. *Gallahue,* 12 Gratt. 655; reiterated in respect to a municipal tax law, *W. U. Tel. Co.* v. *Richmond,* 26 Gratt. 20.

(*c.*) The Code, chapter 34, section 1, page 319, defines the subjects of license taxes as "any citizen of this State, any person entitled to the privileges of citizenship in this State, or residing in it, any firm or company doing business in it, any corporation created by this State, or any of the United States, or any other person on whom a license tax shall be specially imposed;" and by chapter 54, section 32, page 528, cities and towns are authorized to impose license taxes in the cases mentioned in the 34th chapter, in which licenses are required by the State. This would make the city levy fluctuate with the State tax bill. Hence the provisions of the charter, section 5, chapter 8, were made as broad as they are there seen to be, and *independent* of the annual State tax bill, "whether taxed by the State or not."

The provisions of chapter 54 are cumulative to the charters of cities, except when inconsistent with sections 39–46; charter of Lynchburg; Acts '79–'80, page 113, section 11; page 98, chapter 1; *Ould & Carrington* v. *Richmond,* 23 Gratt. 470.

(6.) It has been the customary mode of taxing railroads in Virginia, for many years to tax them upon their gross receipts. Acts 1859–'60, chapter 1, section 58; Code of 1860, page 200, section 58.

The recent method by assessment of their entire property through the board of public works, for State and county purposes, was probably induced by the pendency of the suit of *Va. & Tenn. R. R. Co.* v. *Washington Co.,* 30 Gratt. 471.

It was first passed March 13, 1877, as to the State, and extended to the counties by the act of 27th February, 1880. None of these acts apply to the cities. They leave them to proceed on their own way according to the powers conferred in their charters. · No valid reason can be assigned why the counties should be empowered to levy taxes on railroad companies (Acts

1879–'80, page 82), for county purposes, while the cities should be debarred of revenue from that source.   On the other hand there is a plain reason why specific provisions should be made in favor of the counties and none in respect to the cities, found in the fact that the boards of supervisors have no legislative powers, while the councils of cities have, and are thereby enabled to establish and maintain, adjust and modify, a fiscal system.   The want of this power was one point on which the decision in the Washington county case rests.   It was decided in July, 1878, and the act of 27th February, 1880, above cited, was passed by the next session of the legislature to supplement this ascertained defect of power.   (Compare 30 Gratt. 471, 25th July, 1873, and act 27th February, 1880, Acts 1879–'80, page 82, and the connection between the two becomes apparent.)

*Kirkpatrick & Blackford* and *John W. Daniel*, for the defendant in error.

1. A railroad is an entirety, and cannot be spoken of as actually located in any county, city, or town, which it traverses or touches.

2. The powers of municipal bodies are delegated, and must be strictly construed,—especially when they relate to taxation.

3. "If it is not manifest that there has been a purpose by the legislature to give authority for collecting a revenue by taxes on a specified occupation, any exaction for that purpose will be illegal." (Cooley on Taxation, 387).

4. The intention of the legislature to authorize a burden to be imposed must be explicitly and distinctly shown; when there is any ambiguity found, the construction must be against the power.

5. Where particular words are followed by general ones, the latter are to be held as applying to persons and things of the same kind with those which precede.

6. Public policy should be looked to as indicative of legisla-

tive intent; and when a fixed policy has been long pursued by the State, no radical change therein will be presumed, unless set forth in very explicit terms.

7. A railroad merely touching *at* Lynchburg is not "a person or employment" *in* the city of Lynchburg, within the meaning of its charter.

HINTON, J., delivered the opinion of the court.

The sole question in this case is, whether the city of Lynchburg has the power under its charter, to assess a railroad corporation with a license tax. By section 3, of chapter 8, of said charter, the council is given the power to tax all corporations located in the city, or having their principal office therein; and all real and personal property in the city not exempt by law from taxation. And it is admitted, that under the second of the above recited provisions, the city taxes all of the real and personal property of the defendant company within its limits.

Section 5, of the same chapter, reads as follows: "The council may impose a tax on merchants, commission merchants, auctioneers, manufacturers, traders, lawyers, physicians, dentists, brokers, keepers of ordinaries, hotel keepers, boarding-house keepers, keepers of drinking and eating houses, keepers of livery stables, daguerrean artists of all kinds, agents of all kinds, (including the agents of insurance companies whose principal office is not located in the city), sellers of wines and other liquors, venders of quack medicines, public theatrical or other performances or shows, keepers of billiard tables, ten-pin alleys, pistol galleries, hawkers, pedlars, sample merchants, *and upon any other persons or employment which it may deem proper, whether such person or employment be herein specially enumerated or not, and whether any tax be imposed thereon by the State or not.*"

And, it is under the concluding words of this section, which we have italicized, that the right to impose the tax in question is claimed. The real inquiry of the court, therefore, is to as-

certain the meaning of the legislature as expressed in these words.

And, in the prosecution of this purpose, we must bear in mind the well settled rule that, every grant of the power of taxation to a municipal or other subordinate body must be strictly construed. Upon this point, a learned writer has said: "In the construction of any grant of the power to tax made by the State to one of its municipalities, the rule accepted by all the authorities is, that it should be with strictness. The reasonable presumption is held to be, that the State has granted in clear and unmistakable terms all it has intended to grant: and whatsoever authority the municipal officers assume to exercise, they must be able to show a warrant for it in the words of the grant." Cooley on Taxation, 209; and to the same effect are the cases in this State. See *City of Richmond* v. *Daniel*, 14 Gratt. 387; *Orange & Alexandria R. R. Co.* v. *Alexandria*, 17 Gratt. 184; *Virginia & Tennessee R. R. Co.* v. *Washington county*, 30 Gratt. 474.

Now it is undeniably true that, for civil purposes, corporations are deemed and taken as persons when the circumstances in which they are placed are identical with those of natural persons expressly included in the statute. *Baltimore & Ohio R. R. Co.* v. *Gallahue's adm'rs*, 12 Gratt. 663; and perhaps, under our Code, chapter 15, section 13, page 195, which provides that the word person may extend and be applied to bodies politic and corporate as well as individuals, that the word "person" must be held to embrace, even in statutes which confer the power of taxation, artificial as well as living beings, unless there be something in the subject matter, object, words or frame of the act, indicating that such was not the purpose of the legislative mind. *Western Union Tel. Co.* v. *Richmond city*, 26 Gratt. 1; *Miller's executors* v. *Commonwealth*, 27 Gratt. 110. This, however, is not the ordinary sense in which this word is used, and it cannot be denied that in its usual and common acceptation it does not extend to corporations. It is equally true

that the word "employment" in its ordinary and natural acceptation does not extend to or include either a railroad corporation or its business. In the case of *The City Council* v. *Lee*, 3 Brev. R. 227, Nott, J., in discussing the question whether a tax "on all profits or income arising from the pursuit of any faculty, profession, occupation, trade or employment" included the salaries of public officers, said: "The word 'employment' is the only word under which it is pretended that they can be included. I do not know," says he, "that this word is anywhere used as a technical term. It is a common word, generally used in relation to the most common pursuits, and, therefore, ought to be received by this court as understood in common parlance;" and so we think it must be understood in this case. If, therefore, the words "persons" and "employment," used in this statute, are to be taken according to their natural import, it will be at once seen that they cannot be held to comprehend a railroad corporation, which is neither a person nor an employment within the ordinary acceptation of those words. Nay, more, if we shall find no language in the statute indicating that these words were used with reference to a higher and different class of persons and employment than those enumerated in the preceding special words, we must construe the words "persons" and "employment" as applicable to persons and employments *ejusdem generis* with the enumerated classes: for the well established rule in the construction of statutes is, that where particular words are followed by general ones, the latter are to be held as applying to persons and things of the same kind with those which precede; Potter's Dwarris, 236; which means no more, as has been acutely observed by a learned judge, than this, that the law should be construed according to the apparent intention of the legislature, to be gathered from the language used, connected with the subject of legislation, so that its terms shall not be extended by implication beyond the legitimate scope or import of the words used. Wagner, J., in *City of St. Louis* v. *Laughlin*, 49 Mo. 563.

But it has been argued with great power and ability that these words, when taken, as they must be, in connection with the words which follow them, are broad enough to include railroad corporations, and plainly manifest an intention on the part of the legislature to exclude the application of the rule of *ejusdem generis* from this statute. Such, however, does not seem to us, after a careful consideration of the terms of the statute, to be the case. For the words "which it may deem proper," taken in the connection in which they are found, do not seem to be entitled to any special significance. They do indeed confer in express terms a discretion which the council would doubtless have had if they had been entirely omitted. But that discretion, far from enlarging and elevating the power of the council, in the matter of taxation, to subjects of a higher degree, really imports a discretion in the council to tax only such subjects analogous to the enumerated classes as the council may see fit to select. And whilst the obvious import of the words "whether such person or employment be herein specially enumerated or not, and whether any tax be imposed thereon by the State or not," is to extend the power of the city to tax other persons and employments than the enumerated classes, regardless of whether they are taxed by the State or not, it cannot be said to necessarily convey the idea that these new taxable subjects shall be different in character or higher in degree.

After a careful examination of the act, we are unable to discover anything which clearly indicates an intention on the part of the legislature to confer upon this municipal council the power to tax railroad corporations under cover of these general words.

We must, therefore, hold, in accordance with the uniform current of authority, that the general words here used are restricted to such persons and employments as may be analogous to those previously mentioned.

In *Sandiman* v. *Breach*, 7 Barn. & Cres. 96, the words "other

person or persons" was held not to have been used in a sense large enough to include the owner and driver of a stage-coach. In *Casher* v. *Holmes*, 2 Barn. & Adolp. 596, the words "all other metals," were held not to include gold and silver, which are precious metals. In *Rex* v. *Cleworth*, 4 B. & S. (116 E. C. L.) 927, a farmer was held not to be within the statute 29 Car. 2, chapter 7, section 1, which enacts that no tradesman, artificer, workman, laborer, or other person whatsoever, shall do or exercise any worldly labor, business or work of their ordinary callings, upon the Lord's day or any part thereof," &c. In Butler's appeal, 73 Penn. St. R. 452, the clause "also, all other places of business or amusement conducted for profit," were held not broad enough to embrace bankers, brewers or druggists. And in the *City of St. Louis* v. *Laughlin*, 49 Mo. 564, the sweeping words "all other business, trades, avocations or professions whatever," were held not to include persons not of the same *generic* character or class with the specifically enumerated classes, and hence the city of St. Louis had no power to pass an ordinance levying a tax on attorneys at law. See also, Broom's Legal Maxims, 7 Ed. 651.

The judgment of the corporation court of the city of Lynchburg is right and must be affirmed.

JUDGMENT AFFIRMED.