THE STATE OF INDIANA *v.* MUTUAL LIFE INSURANCE
COMPANY OF NEW YORK.

[No. 21,409. Filed December 9, 1910. Mandate modified December 23, 1910.]

1. STATES.—*Action Against.*—A State cannot be sued without its consent; and if terms are imposed by the statute giving consent, plaintiff must bring himself within such terms. p. 71.
2. STATES.—*Liability for Acts of Officers.*—In the absence of a statute, a State is not liable for the misconduct, negligence, or tortious acts of its officers or agents. p. 71.
3. STATES.—*Unlawful Collection of Money.*—*Recovery of.*—*Contracts.*—Where the plaintiff, under protest, pays money to the State to which the State is not lawfully entitled, an action for the recovery thereof is not based upon an express contract within

§1485 Burns 1908, Acts 1895 p. 231, providing that an action may be brought against the State upon any claim arising "out of contract express or implied." p. 71.

4. STATES.—*Wrongful Collection of Insurance Fees.—Recovery of.* —*Implied Contracts.—Statutes.*—Where an insurance company, under penalty of a revocation of its right to transact business within the State, or of being compelled to pay $100 a day for each day it failed to pay the amount of fees demanded by the State, pays into the state treasury fees to which the State is not legally entitled, such company may maintain an action for the recovery thereof under an implied contract within §1485 Burns 1908, Acts 1895 p. 231, providing that an action may be brought against the State upon any ·claim arising "out of contract express or implied." pp. 71, 73, 74.

5. STATES.—*Unlawful Insurance Fees Collected.—Recovery of, from State.—Complaint.—Tort.*—A complaint by an insurance company to recover fees wrongfully collected by the State, alleging that such money was extorted, that the company was coerced and imperiled by a threat of a state officer to revoke its authority merely shows the essential fact that the money was not voluntarily paid, and does not show the commission of a tort. p. 72.

. 6. ACTION.—*"Money Demands on Contract."*—The phrase "money demands on contract," when used with reference to an action, imports any action arising out of contract, where the relief demanded is a recovery of money. p. 72.

7. CONTRACTS.—*Express.—Implied.*—An express contract is one in which the terms are definite and mutually agreed upon, while an implied contract is one wherein no formal agreement is made, but the contract is inferred from the facts and cicumstances or is supplied by law, regardless of the intention of the parties. p. 73.

8. STATES.—*Courts.—Jurisdiction.*—The Superior Court of Marion County has jurisdiction of the subject-matter of an action against the State for the recovery of insurance fees wrongfully collected by it (§1485 Burns 1908, Acts 1895, p. 231). p. 76.

9. STATES.—*Officers.—Authority.—Notice.—Auditor of State.—Insurance Fees.*—Insurance companies are presumed to know the powers and duties of the Auditor of State, and that he has no authority to collect the insurance fees that under §10216 Burns 1908, Acts 1891 p. 199, §67, are payable "into the treasury of the State." p. 77.

10. TAXATION.—*Insurance Fees. — Statutes. — Departmental Construction.*—Section 10216 Burns 1908, Acts 1891 p. 199, §67, requiring foreign insurance companies to pay certain fees "into the treasury of the State" is too plain and unambiguous to be subject to departmental construction. pp. 78, 80.

State *v.* Mutual Life Ins. Co.—175 Ind. 59.

11. OFFICERS.—*Principal and Agent.—Auditor of State.—Insurance Fees.*—An Auditor of State who collects insurance fees that are required by §10216 Burns 1908, Acts 1891 p. 199 §67, to be paid "into the treasury of the State" receives such fees merely in the capacity of agent of the companies so paying such fees.　p. 79.

12. STATES.—*Illegal Acts of Officers.—Acquiescence.—Complaint.—Conclusions.*—The State cannot be held to acquiesce in the unauthorized acts of its officers, and an allegation that it so acquiesced, is a conclusion.　p. 81.

13. ESTOPPEL.—*In Pais.—Fraud.*—The effect of an estoppel *in pais* is to preclude the assertion of a legal right or defense, and is justified on the ground of prevention of fraud by the person sought to be estopped, the fraud consisting in the denial of that which the person sought to be estopped has previously asserted. p. 81.

14. ESTOPPEL.—*Purpose.*—The purpose of an estoppel is to preserve acquired rights and not to create new ones.　p. 82.

15. ESTOPPEL.—*States.—Illegal Insurance Fees Collected by Auditor of State.—Reports.—Notice.*—The State is not estopped from collecting certain insurance fees because of the fact that they were paid to the Auditors of State instead of "into the treasury of the State," that such auditors' reports showed such payments, and that such reports were submitted by the Governors to the General Assemblies, there being nothing to show that the companies so paying did not know that such Auditors of State were not authorized so to collect such fees.　pp. 82, 83.

16. ESTOPPEL.—*Fraud.—Equal Knowledge of All Facts.*—Where the parties have equal knowledge of all the facts, no estoppel arises.　pp. 83, 84.

17. TAXATION.—*Payment to Wrong Person.—States.—Insurance Fees.*—Payment of insurance fees to the Auditor of State does not constitute payment thereof to the State.　p. 84.

18. MAXIMS.—*Ignorance of the Law does not Excuse.—Statutes.*—The maxim *"ignorantia legis neminem excusat"* applies alike to the common and to the statutory law.　p. 84.

19. STATES.—*Insurance Fees.—Collection of, by Auditor of State.—Failure to pay to Treasurer of State.*—Where a foreign insurance company paid to the Auditors of State its insurance fees, and they failed to pay such fees in whole or in part "into the treasury of the State" (§10216 Burns 1908, Acts 1891 p. 199, §67), the State may collect the fees not paid "into the treasury of the State."　p. 84.

20. INTEREST.—*Insurance fees.—Illegal Collection of, by State.*—Where a foreign insurance company fails to pay the fees due therefrom to the State, it is erroneous, in an action by the State

for the recovery thereof, to allow interest thereon, the statute (§10216 Burns 1908, Acts 1891 p. 199, §67) providing for a penalty, and not for interest for such failure.   pp. 84, 85.

21.   TAXATION.—*Interest.—Debts.*—Taxes are not debts in the ordinary sense of the term, and interest is not collectible thereon in the absence of a statute providing therefor.   p. 85.

From Superior Court of Marion County (77,243); *J. L. McMaster,* Judge.

Action by the Mutual Life Insurance Company of New York against The State of Indiana.   From a judgment for plaintiff, defendant appeals.   *Affirmed in part.   Reversed in part.*

*James Bingham,* Attorney-General, *W. H. Thompson, E. M. White* and *A. G. Cavins,* for the State.

*Smith, Duncan, Hornbrook & Smith, William L. Taylor* and *Romney L. Willson,* for appellee.

JORDAN, J.—This action was instituted by the Mutual Life Insurance Company of New York against The State of Indiana in the Superior Court of Marion County, the latter sitting as a court of claims under and by the authority of the provisions of §1485 Burns 1908, Acts 1895 p. 231.   By the first paragraph of the complaint the plaintiff seeks to recover, as a claim against the State, $1,296.76 as principal and $1,726.84 interest paid by it to the Treasurer of State involuntarily and under protest.   The principal sum demanded arises out of money paid by plaintiff to James H. Rice, Auditor of State, as taxes for the first half of the year 1884, being $3 on each $100 of premiums collected by plaintiff within the State of Indiana, which sum it appears that said auditor failed to pay to the Treasurer of State. The payment by plaintiff of the principal and interest was made on December 11, 1906, and interest was computed and charged by the State from 1884 to December 11, 1906. By the second paragraph of the complaint plaintiff seeks to recover from the State the interest only that it paid upon the principal.

Appellant demurred to each paragraph of the complaint

for want of facts. Its demurrer was overruled, to which ruling of the court it excepted. It then answered the complaint specially in four paragraphs. No general denial was filed. Appellee demurred to each paragraph of the answer. Its demurrer was sustained to the second, third and fourth paragraphs of the answer, and appellant refused to plead further. Appellee's demurrer to the first paragraph of the answer was overruled, and it refused to plead further. Thereupon the court rendered a judgment in favor of appellee.

From the judgment appellant has appealed directly to this court under the provisions of §1489 Burns 1908, Acts 1889 p. 265, §5, and relies for reversal of the judgment below upon the alleged errors of the court in overruling its demurrer to each paragraph of the complaint, and in sustaining the demurrer of appellee to the second, third and fourth paragraphs of the answer. The complaint to some extent may be said to state conclusions of the pleader instead of facts.

In the first paragraph plaintiff alleges that on and prior to March 8, 1848, it was, and ever since has been and yet is, a corporation organized and acting under and pursuant to the laws of the State of New York; " that ever since said March 8, 1848, it has been engaged in conducting the business of life insurance in the State of Indiana, under authority granted to it by the properly-constituted authorities of said State; that upon the enactment of the first statute of said State so requiring, it made application, as a foreign corporation, to the Auditor of State, for permission to do business in the State of Indiana; that upon such application plaintiff took every step and did everything which said auditor requested and required as a condition precedent to its right to do business in said State of Indiana, and thereupon said Auditor of State granted to plaintiff his certificate of authority to do business in the State of Indiana as a foreign insurance company; that from time to time ever since said date, and at the times provided by the statutes of the State of Indiana, from time to time in force, it has applied to the

Auditor of State for a renewal of such certificate of authority to do business in the State of Indiana, and at the time of each application plaintiff took every step and did everything which said auditor for the time being requested or required from it, as conditions precedent to its doing business in the State of Indiana as a foreign life insurance company, and in every such instance said Auditor of State granted to plaintiff his certificate of its right to do business in the State of Indiana as a foreign insurance company; that ever since said March 8, 1848, plaintiff has been actively engaged in the business of life insurance in the State of Indiana under such certificates, and is yet so engaged in doing a life insurance business in the State of Indiana under the last certificate of such authority to do business in the State of Indiana, issued to it by said Auditor of State; that from the date of its beginning to do business in the State of Indiana under the authority of the certificates so issued to it by the Auditors of State, as heretofore set forth, up to and including the year 1905, each Auditor of State construed the statutes of said State as authorizing him to receive and collect from plaintiff, and from other foreign insurance companies doing business in the State of Indiana, all taxes and charges levied and demanded under the laws of said State for the privilege of so doing business in said State, for the purpose of paying them into the office of the Treasurer of State and each Auditor of State from time to time demanded and received from this plaintiff and all other foreign insurance companies doing business in the State of Indiana (of which in 1884 there were 122, and which steadily increased until in 1905 there were 162), except five, under the construction so placed by him upon such statutes, the taxes and charges by him computed as being due, and from said plaintiff under such statutes for the privilege of doing such business in the State of Indiana, and in pursuance of such demand, this plaintiff paid all such taxes and dues to said Auditors of State from the date of its admission to do business in the State of Indiana up to and including the

year 1905; that said Auditors of State paid said taxes and dues (except possibly as hereinafter stated) to the Treasurers of State, who received the sums of money from said auditors, and placed them in the funds of the State. And plaintiff further says that, as required by the statutes of the State of Indiana, from time to time in that behalf enacted and in force, the respective Auditors of State made stated reports to the Governors of the State of Indiana of the business transacted in the office of said auditors during the period covered by said reports, respectively; that said reports in every instance showed the fact that each auditor, under the construction by him placed upon such statutes, had collected from all such foreign insurance companies, except five, the taxes due from them to the State of Indiana, and had charged himself therewith on his account at the time of the receipt thereof, and had credited himself with the payment thereof to the Treasurer of State at the time of making such payments to said treasurer; that at the meetings of the General Assembly of the State of Indiana printed copies of such reports of the Auditors of State were by the Governors transmitted to both the senate and the house of representatives, and printed copies thereof were forwarded to each member of both houses; that the chief executives of the State and the legislative department of the government were in this manner fully apprised of the construction placed upon the statutes of the State, enacted in that behalf, by the Auditors of State, and of their acts and conduct in receiving such taxes and in paying them to the Treasurers of State; that in addition to the delivery of copies of said printed reports to the Governors and to the members of the General Assembly of the State of Indiana, many hundreds of copies of said reports were distributed to private citizens throughout the State. And plaintiff further avers that in certain years the State Board of Tax Commissioners, which was charged with the duty of preparing blank forms of reports of said insurance companies, to be by them made to the Auditor of State as a basis for

estimating the taxes to be paid by them, in preparing such form of reports caused to be printed on the back thereof a copy of the statute in that behalf enacted: 'Section 83. (Acts 1881 pp. 611, 636.) Every insurance company not organized under the laws of this State, and doing business therein, shall, in the months of January and July of each year, report to the Auditor of State, under oath of the president and secretary, the gross amount of all receipts received in the State of Indiana, on account of insurance premiums for the six months last preceding, ending on the last day of December and June of each year next preceding, and shall, at the time of making such report, pay into the treasury of the State the sum of $3 on every $100 of such receipts, less losses actually paid within the State, and any such insurance company failing or refusing, for more than thirty days, to render an accurate account of its premium receipts, as above provided, and pay the required tax thereon, shall forfeit $100 for each additional day such report and payment shall be delayed, to be recovered in an action in the name of the State of Indiana on relation of the Auditor of State, in any court of competent jurisdiction. And it shall be the duty of the Auditor of State to revoke all authority of any such defaulting company to do business within this State.'

" That such construction of said statute placed thereon by said several Auditors of State was, with full knowledge thereof, acquiesced in for a period of more than twenty-five years by the several Governors of the State of Indiana, by the Treasurers of State, by the legislative department thereof, and by the public at large, as the proper construction thereof. And plaintiff further avers that in the years 1904 and 1905 David E. Sherrick was Auditor of State, and in such years unlawfully converted to his own use certain of the moneys so paid into his hands by foreign insurance companies; that the Governor of Indiana, still putting the same construction upon the statutes of Indiana in that behalf enacted, directed the Attorney-General of the State of Indiana and the prose-

cuting attorney of the nineteenth judicial district of the State of Indiana to prosecute said Sherrick for the embezzlement of moneys belonging to the State of Indiana, and they did so institute and prosecute such proceedings, and said Sherrick was convicted upon said charge; that upon the trial of said cause the Criminal Court of Marion County adopted the same construction of said statute, but upon the appeal of said cause to the Supreme Court of the State of Indiana, that court determined that said Sherrick, as Auditor of State, had no lawful authority to receive such taxes, and this was the first time that any such construction had been put upon any such statute by any department of the state government. And plaintiff further avers that, on making said several payments of said taxes for said several years to the several auditors holding said office from time to time during said years, it acted in the utmost good faith, believing that said auditors were lawfully authorized to receive said taxes for the purpose of paying them into the treasury of the State, and until August 6, 1906, supposed that said auditors had, in due course, paid all said moneys into the treasury of the State of Indiana; that after the rendition of a decision by the Supreme Court of the State of Indiana in the case of Sherrick against The State of Indiana [*Sherrick* v. *State* (1906), 167 Ind. 345], Warren Bigler, then holding the office of Auditor of State, notified plaintiff by letter that James H. Rice in the year 1884 had failed to pay over to the Treasurer of State the sum of $11,418.50, which had been paid into his hands by various foreign insurance companies, and that on that account there was due from plaintiff the sum of $1,799.45, and demanded payment thereof; that thereafter, to wit, on August 22, 1906, said Warren Bigler, as such Auditor of State, wrote to plaintiff another letter, in which he stated that he was mistaken in his former letter, and that there was due from plaintiff, on account of the failure of said James H. Rice, former Auditor of State, to pay over to the Treasurer of State the amount

by plaintiff paid for the last half of the taxes for the year 1884, the sum of $1,296.76, to which there must be added interest to the amount of $1,718.21, making an aggregate sum of $3,014.97, which amount was demanded from plaintiff; that on November 20, 1906, said Warren Bigler wrote another letter to plaintiff, demanding payment of said sum on or before December 11, 1906, and declared if said sum was not paid on or before that date plaintiff would be declared in default to the State of Indiana, a penalty of $100 a day added thereto, a forfeit added for each day until it was paid, and its authority to do business in the State of Indiana declared revoked; that on November 30, 1906, John C. Billheimer, who had succeeded Warren Bigler as Auditor of State, wrote a letter to plaintiff, wherein he stated that the second letter of said Warren Bigler was in error in stating that the taxes which said James H. Rice, as Auditor of State, had failed to pay over to the Treasurer of State were for the last half of the year 1884, and that in fact they were for the first half of the year 1884, and demanded the amount of $3,014.97; that letters of like tenor and effect, save as to amounts claimed to be due, were written by said Warren Bigler, Auditor of State, and John C. Billheimer, Auditor of Sate, to a number of other foreign insurance companies, and such insurance companies were engaged in endeavoring to discover whether in point of fact said James H. Rice had failed to account for said sum of $11,418.50, and were of the opinion that it was by no means certain that he had failed to account for the sum, and they requested said Auditor of State to grant them time further to investigate that question, and that time be given them in which to institute some test case in the proper court, both to determine that fact and also to determine whether, as a matter of law, they were liable to pay said several sums demanded from them, respectively, even if it should be proved that said James H. Rice, Auditor of State, had failed to pay or account for said sum of $11,418.50, and had offered by way of compromise to adjust the claim

of the State by the payment of principal, without right to
make any demand for its return, and bring a friendly suit
to test the question of liability for the interest, which offer
was first accepted, but afterward, on December 10, 1906,
said auditor withdrew his assent to such compromise, and
declared that all such companies must pay the full amount
so claimed from them, principal and interest, on or before
December 11, 1906, and if any company failed to make such
payment on said date the penalties stated in said letter of
November 10 would be enforced, and the authority of such
company to do business in the State of Indiana would be
revoked; that during the years before named, plaintiff, by
expenditure of large sums of money and much labor, had
established a large and profitable business in the State of
Indiana, and had secured more than thirteen thousand
residents and citizens of the State of Indiana to become
policy-holders in its company, whose policies aggregated
$26,454,251; that the annual premiums thereon amounted
to over $960,000; that in the event said Auditor of State
should proceed to enforce said threat of revoking its authority
to do business, it would not only inflict great and irreparable
injury upon the business of plaintiff, causing a loss of many
thousands of dollars to it, but it would create much con-
fusion and uncertainty in the minds of policy-holders, and
endanger their securities under said policies; that thereupon
plaintiff, imperiled and coerced by such threats so made by
said Auditor of State, did pay into the office of the Treasurer
of State, said principal sum of $1,296.76 and the sum of
$1,726.84 interest thereon to date of said payment, and
notified both the treasurer and the auditor in writing that
it paid said sums not voluntarily, but under the coercion and
duress arising out of the threats contained in said com-
munications from said Auditor of State, and to arrest the
imposition of the threatened penalties and the revocation
of its charter, and under protest both as to principal and
interest, and reserved the right to recover either of said sums
so paid."

The second paragraph of the complaint is substantially the same as the first, except that appellee thereunder seeks to recover $1,726.84 so paid by it as interest upon the principal sum of $1,296.76 into the office of the Treasurer of the State.

At the very threshold we are confronted with the contention of the Attorney-General that the Superior Court of Marion County, under the provisions of §1485 Burns 1908, Acts 1895 p. 231, had no jurisdiction to hear and determine this action. This section reads as follows: "That any person or persons having or claiming to have a money demand against the State of Indiana, arising at law or in equity, out of contract express or implied, accruing within fifteen years from the time of the commencement of the action, may bring suit against the State therefor in the Superior Court of Marion County, Indiana, by filing a complaint with the clerk of said court and procuring a summons to be issued by said clerk, * * * and jurisdiction is hereby conferred upon said Superior Court of Marion County, Indiana, to hear and determine such actions, and said court shall be governed by the laws, rules and regulations which govern said superior court in civil actions in the making up of issues, trial and determination of said cause."

The argument advanced by the Attorney-General is that appellee, under both paragraphs of its complaint, proceeds upon the theory that the money which it seeks to recover was "wrongfully and unlawfully extorted from it by the State, acting through its auditor, and that appellee was compelled to pay into the state treasury a sum of money which it did not owe, or to submit to a revocation of its right to do business within this State, and the imposition of a statutory penalty of $100 a day." Or, in other words, he insists that each paragraph charges the Auditor of State with illegal, unauthorized and wrongful acts in excess of the power granted to him by law. His claim is that the action as presented by appellee's complaint sounds in tort and not in contract. Therefore, it is asserted that under the terms

of the statute in question the lower court had no jurisdiction.

It is settled beyond controversy that the State, which in the eye of the law is recognized as a sovereign, cannot without its consent be sued by a citizen. In case the State, through its legislative department, has granted the right or privilege to claimants to institute actions against it upon certain terms and conditions, all persons seeking to avail themselves of the privilege so granted must accept it subject to the terms and conditions attached thereto or forming a part of the right as granted by the State. Or, in other words, the suit instituted must be limited to such claims as are contemplated by the act authorizing the State to be sued. *May* v. *State* (1892), 133 Ind. 567; *Thweatt* v. *State* (1881), 66 Ga. 673; *Chicago, etc., R. Co.* v. *State* (1881), 53 Wis. 509, 10 N. W. 560; *Houston* v. *State* (1898), 98 Wis. 481, 74 N. W. 111, 42 L. R. A. 39; *Murdock, etc., Grate Co.* v. *Commonwealth* (1890), 152 Mass. 28, 24 N. E. 854, 8 L. R. A. 399; *Hill* v. *United States* (1893), 149 U. S. 593, 13 Sup. Ct. 1011, 37 L. Ed. 862.

In the absence of a statutory law creating a liability, the rule universally recognized and enforced is that neither a state nor the United States is legally liable to respond in damages to a person for an injury resulting from the misconduct, negligence or tortious acts of its officers or agents. *Houston* v. *State, supra,* and authorities cited; *German Bank, etc.,* v. *United States* (1893), 148 U. S. 573, 13 Sup. Ct. 702, 37 L. Ed. 564.

It is evident under the facts alleged in the paragraphs of complaint, that appellee's demand against the State cannot be said to arise out of or be founded on an express contract between it and appellant. Consequently, unless appellee's money demand against the State— which it either actually has or claims to have—arises out of an implied contract, appellee, under the provisions or terms of the statute in question, has no right to maintain this action, and the demurrer of appellant to the

complaint upon this ground alone should have been sustained.

We are unable, however, to concur in the view of the Attorney-General, that the action at bar arises out of a tort committed by an officer or agent of the State. It is true that the pleading contains averments that the money that was paid into the state treasury by appellee was wrongfully and unlawfully extorted from it; that it was coerced by a threat made by the Auditor of State that he would revoke its authority to do business within the State. It is manifest that these averments were employed by the pleader more fully to show that the money in question was paid over by appellee involuntarily, and, therefore, if it belonged to it and not to the State it might be recovered in this action. *Scottish Union, etc., Ins. Co.* v. *Herriott* (1899), 109 Iowa 606, and cases cited.

Eliminate these averments from the complaint, and it is shown by the remaining clear and positive allegations that the payment in question to the State was not voluntarily made, but was made by appellee under protest, and at the time it made the payment, as shown, it notified the Auditor of State and the Treasurer of State that it reserved the right to recover the money so paid. The essential fact to be shown by the complaint upon this feature of the case was that the payment of the money was involuntary. Under the circumstances, the claim of the Attorney-General, that the action sounds in tort instead of in contract, is untenable.

We may next inquire, What did the legislature mean by the words " a money demand arising at law * * * out of contract express or implied " ? The phrase " money demands on contracts " was defined in the revised statutes of 1852 as follows: " The phrase ' money demands on contract,' when used in reference to an action, means any action arising out of contract, where the relief demanded is a recovery of money." 2 G. & H. §797, p. 336. This same definition is contained in the revision of 1881.

§1356 Burns 1908, §1285 R. S. 1881. It must be conceded that the relief demanded in this action is the recovery of money. It is evident that this demand does not arise out of an express contract.

It will be noted that the statute that authorizes the State to be sued does not confine the action alone to one arising at law or in equity out of an express contract,

4. but it may be one which arises out of what in law is recognized and denominated as an implied contract.

We may presume that the legislature, in extending to claimants the right to recover against the State upon a money demand arising out of an implied contract, fully understood the meaning and character of such contracts. The legislature evidently contemplated that money at some time might be paid into the treasury of the State under such circumstances as would not lawfully permit the State to retain it against the person making the payment, and therefore the State, under the law, would be impliedly obligated to refund the money to the person entitled thereto. We are of the opinion that, in view of its terms, the statute in question must be held to apply to such a case. The Attorney-General, however, insists that the State has never recognized appellee's claim to the money in controversy, and in no manner has it agreed to repay it or restore it to appellee. It is true that the facts as alleged do not disclose any express agreement on the part of the State to refund the money in question to appellee, and it is evident, from the argument of its counsel, that repayment thereof is the very opposite of its intention. It may be said, we think, that some looseness and ambiguity impress some of the decisions of the higher courts in

7. respect to the application of the principle of implied contract to particular facts. An express contract is said to be a mutual understanding and coming together of the minds of the contracting parties to do or not to do a particular thing; while an implied contract, generally speaking, is defined (1) as an obligation where there is no express or

formal agreement by the parties to the contract, but their intention so to do is shown by their acts or from circumstances, and (2) obligations implied by law, without regard to the acts or intention of the parties. 7 Am. and Eng. Ency. Law (2d ed.) 92; 15 Am. and Eng. Ency. Law (2d ed.) 1078; *People, ex rel.*, v. *Speir* (1879), 77 N. Y. 144.

In express contracts it is the consent of the parties thereto which creates the liability, while under a contract or obligation implied by law there is no actual consent or promise. Under the facts in the particular case, it is the law alone which declares that the necessary consent shall be implied. In *People, ex rel.*, v. *Speir, supra*, the court characterizes implied or constructive contracts— as they are sometimes called—as follows: "There is a class of cases where the law prescribes the rights and liabilities of persons who have not in reality entered into any contract at all with one another, but between whom circumstances have arisen which make it just that one should have a right, and the other should be subject to a liability similar to the rights and liabilities in certain cases of express contract. Thus, if one man has obtained money from another, through the medium of oppression, imposition, extortion, or deceit, or by the commission of a trespass, such money may be recovered back, for the law implies a promise from the wrong-doer to restore it to the rightful owner, although it is obvious that this is the very opposite of his intention."

This principle is recognized and sustained by the decisions of this court, which hold that where a person has obtained money to which he is not entitled, but which in right and justice belongs to another, an action may be maintained for its recovery by the person entitled thereto upon an implied promise or agreement on the part of the person obtaining the money. *McQueen* v. *State Bank* (1850), 2 Ind. 413.

The court in the latter case held that "if one man has obtained money from another through the medium of oppression, imposition, extortion or deceit, such money is, in con-

templation of law, money received for the use of the injured party. It is not the money of the wrongdoer, he has no right to retain it; and the law, therefore, implies a promise from him to return it to the lawful owner." In support of the same rule, see, also, *Ashton* v. *Shepherd* (1889), 120 Ind. 69, and *Moore* v. *Shields* (1889), 121 Ind. 267.

In the latter case this court said: " In an action for money had and received there need be no privity of contract proved, other than such as arises out of the fact that the defendant has received the plaintiff's money under circumstances which make it against conscience that he should retain it."

In 4 Wait, Actions and Defenses 469, the author states the rule as follows: " An action of assumpsit for money had and received is an equitable remedy that lies in favor of one person against another, when that other person has received money either from the plaintiff himself or third persons, under such circumstances, that in equity and good conscience he ought not to retain the same, and which, *ex aequo et bono*, belongs to the plaintiff. * * * It is not, however, essential that any privity of contract should be shown; if the plaintiff's right to the money is established, and the defendant is shown to have received it under such circumstances that he ought not to retain it, the law implies a promise to pay it to the party who ought to have it."

By the facts alleged, it is shown that the State, through its proper officials, demanded of appellee company, and received from it, the money in controversy, and that it passed into the state treasury for the use of the State in the administration of its affairs. In the light of the principle asserted by the authorities to which we have referred, if, as appellee under the facts insists and contends, the State is not entitled to the money in controversy, but, on the contrary, it rightfully belongs to appellee, the State cannot rightfully retain it as against appellee, and the law creates an implied obligation on the part of the State to pay it over

to appellee. Therefore, appellee had the right to sue
8.     the State in the Superior Court of Marion County,
under §1485, *supra,* and that court, under the pro-
visions of the statute, had jurisdiction to hear and determine
the merits of the action. What we have said, however, in
dealing with the question of jurisdiction as raised by the
Attorney-General must be confined to that question alone;
or, in other words, to appellee's right to sue the State under
the statute upon an implied contract or liability, and we must
not be understood as in any manner upholding or affirming
appellee's ultimate right to recover against the State upon
the facts alleged in the complaint.

We next turn to the consideration of the case as presented
by the first paragraph of the complaint. The contention
of the Attorney-General is that the averments of the com-
plaint disclose that the money that appellee seeks to recover
in this action was lawfully collected from it both as to principal
and interest, and that therefore there is no liability shown to
exist against the State that appellee can enforce in this
action. He insists that the decisions in the cases of *Sherrick*
v. *State* (1906), 167 Ind. 345, and *Daily* v. *State, ex rel.* (1909),
171 Ind. 646, deny appellee's right to recover the money in
dispute, and that the decisions in those cases govern the
question of the liability of the State. On the other hand,
counsel for appellee present their view of the case from the
facts as follows: " Our contention is this: that although
the construction placed upon the law by the Auditor of State
was not sound, yet the State, through the officers and depart-
ments already so many times mentioned, by adopting that
construction and acquiescing therein for so long a period
estopped itself from asserting the invalidity thereof against
all persons who, acting in good faith and with honest intent
and purpose, also accepted such interpretation of the statute
prior to the time when a different construction thereof was
announced by this court." Counsel very frankly assert that
if they are wrong in this contention that ends the matter.

Further advancing their contention, counsel say: "As to duration of time, the question is simply this, Did the State acquiesce in such payments so generally and for so long a period of time as to lull appellee to sleep, and lead it to understand that it might safely pursue the course it did? Had any seasonable objection been made to the course pursued, appellee and other insurance companies, in the life of the bond given by the Auditor of State, could have recovered the money thus wrongfully paid to Rice. The acquiescence of the State after the payments were made is quite as important a consideration as the acquiescence in the payments made prior to 1884, and particularly is this true, when the State, by such acquiescence, has cut off the insurance companies from any redress. So that appellee on the question of acquiescence is entitled to reckon the time that has elapsed since 1884, just as much as the time that elapsed from 1873 to 1884."

The statute governing the payment of taxes by foreign insurance companies—to which class appellee belongs—is embraced in section sixty-seven of the general law 9. concerning taxation, approved March 6, 1891 (Acts 1891 p. 199, §10216 Burns 1908). This section declares that "every insurance company not organized under the laws of this State, and doing business therein, shall, in the months of January and July of each year, report to the Auditor of State under oath of the president and secretary the gross amount of all receipts received in the State of Indiana on account of insurance premiums for the six months last preceding, ending on the last day of December and June of each year next preceding, and shall at the time of making such report *pay into the treasury of the State* the sum of $3 on every $100 of such receipts, less losses actually paid within the State, and any such insurance company failing or refusing for more than thirty days to render an accurate [account] of its premium receipts as above provided and pay the required tax thereon shall forfeit $100 for each additional day

such report and payment shall be delayed, to be recovered in an action in the name of the State of Indiana on the relation of the Auditor of State in any court of competent jurisdiction, and it shall be the duty of the Auditor of State to revoke all authority of any such defaulting company to do business within this State." (Our italics.)

It will be observed that this statute in positive and imperative terms requires insurance companies to pay the money exacted from them as taxes, not to the Auditor of State, but into the treasury of the State. This statute appears to have been first enacted in the legislature in 1873, in an act supplementary to and amendatory of an act providing for the uniform assessment of property, etc., and is embraced in sections eight and nine of said act. Acts 1873 p. 205. It was reënacted in 1881, in an act concerning taxation, and is embraced in section 83 of Acts 1881 (s. s.) pp. 611, 636. It was again reënacted in 1891 (§10216, *supra*), and has been a law of the State for a period of over thirty-seven years.

Section 9247 Burns 1908, §5637 R. S. 1881, provides and points out the method of paying money into the treasury of the State. Appellee must be presumed to have known the requirements of §§9247, 10216, *supra;* and in turning the money over to said auditor it was chargeable, at its peril, with notice or knowledge of the scope of his official authority under the law to receive said money for the State as payment of the taxes in question. Or, in other words, that under the laws of the State, he had no authority whatever to receive the money in behalf of the State. *Sherrick* v. *State, supra, Hord* v. *State* (1907), 167 Ind. 622; *Silver, Burdett & Co.* v. *Indiana State Board, etc.* (1905), 35 Ind. App. 438.

Appellee argues that Rice, as Auditor of State, received and accepted the money from it under the provisions of §10216, *supra,* and that he construed said section as authorizing him in his official capacity to receive the money from appellee company to be paid by him to

the Treasurer of State, and it seeks to invoke the principle of practical or departmental construction in order to constitute a part of the basis upon which to predicate its right to recover the money in controversy. Its counsel concede that under the decision in the case of *Sherrick* v. *State, supra,* the construction accorded to the statute by Auditor Rice, and the other auditors following him, was neither sound nor tenable, but they claim that the State is shown to have acquiesced in this construction of the law for a series of years, and that the State is now precluded from claiming that the construction placed on the statute by the auditors was not correct. We are not inclined to accept this view of the case. The statute in question is not impressed with any ambiguity whatever, either patent or latent, and as to its meaning there can be no doubt. Therefore, it affords no room for departmental or judicial construction, for the legislature, in plain and precise terms, has declared therein that the money exacted of foreign insurance companies is, at the time they make their respective reports to the Auditor of State, to be paid by them to the Treasurer of State. Neither departmental nor judicial construction is allowable to interpret a law which is plain upon its face and requires no interpretation. *State* v. *Sopher* (1901), 157 Ind. 360; *Hord* v. *State, supra,* and authorities cited; *United States* v. *Graham* (1884), 110 U. S. 219, 3 Sup. Ct. 582, 28 L. Ed. 126.

The money required to be paid is not a license fee for permitting the insurance companies to conduct their business within the State, but it is for taxes imposed upon such companies by the legislature. In respect to the payment of the money as required by this statute, it is sufficient to say *ita lex scripta est.* Under the law there is no reasonable ground for asserting that the auditors in any manner received the money from appellee in their official capacity, but they must be held to have received it in their individual capacity as the agents of appellee for the purpose, as we may assume, of paying it into the treasury

of the State, possibly less any commission to which they considered themselves entitled. *Sherrick* v. *State, supra.*

The statute did not invoke any construction by said auditors. The provision thereof requiring the money to be paid to the Treasurer of State by the insurance companies is perfectly plain and certain upon its face, it affords no room for interpretation. It was the duty of both appellee and said auditors to regard its requirements. *Sherrick* v. *State, supra.* It must follow, therefore, that the act of said auditors in receiving the money from appellee was not due to any misinterpretation of the law on their part, but must be attributed to the wilful disregard of its plain provisions.

Again, upon another view of the question, the auditors, under the law, were not charged with the execution thereof in respect to whom the money should be paid by the foreign insurance companies in satisfaction of the taxes exacted of them by law. They were bound to know the requirement of the law, and must be presumed to have known that the statute required the money to be paid by such companies, not to them, as auditors, but into the state treasury. Therefore, they had no legal authority to place an interpretation on that provision of the statute which prescribed the officer to whom the money should be paid. Having no legal authority, either express or implied, to interpret the statute in this respect, their acts in so doing would be of no avail. Therefore, under the law in this case, the principle of departmental or administrative construction, for which counsel for appellee contend, can have no application and is without force, for it is only in the discharge of their official duties that a construction or interpretation placed upon a law by departmental or administrative officers charged with the duty of enforcing or applying it becomes material, or of any effect or force. Endlich, Interp. of Stat. §360; *In re Manhattan Sav. Inst.* (1880), 82 N. Y. 142; *United States* v. *Tanner* (1893), 147 U. S. 661, 13 Sup. Ct. 436, 37 L. Ed. 321; *Nye*

State *v.* Mutual Life Ins. Co.—175 Ind. 59.

v. *Foreman* (1905), 215 Ill. 285, 74 N. E. 140; *Westbrook* v. *Miller* (1885), 56 Mich. 148, 22 N. W. 256.

Under this view of the question, appellee's claim that the State has by its conduct so accepted the acts of said auditors, and so acquiesced in their conduct, that it is estopped from demanding the money which it received from appellee on December 11, 1906, is untenable. From this viewpoint it is insisted that it is wholly immaterial what is the proper construction of the statute; that if the auditors accorded the wrong construction to the law and the State acquiesced therein, it is precluded. The infirmity of this argument is that it would be unreasonable to assert that the State can be held in any manner to have acquiesced in the unauthorized acts of said auditors. Those officers, having no jurisdiction to interpret the provision of the statute in controversy, their act in so doing was unwarranted, and the charge that the State accepted the construction and acquiesced therein is but a conclusion of the pleader; for certainly the State cannot be regarded as having accepted and acquiesced in the auditor's unauthorized interpretation of the law, which interpretation is manifestly at variance with the express and plain provisions of the act in question.

The contention of appellee, that the State is estopped by its conduct from requiring appellee to pay the money involved into the state treasury, cannot be upheld. It may be said, in passing, that if the State, on December 11, 1906, was legally entitled to the money that appellee paid over under protest, then, a correct result having been reached by the payment of the money into the state treasury, appellee must fail in this action.

In regard to the question of estoppel urged by appellee, it may be said that "the effect of an estoppel *in pais* is to prevent the assertion of an unequivocal right, or preclude a good defense, and justice demands that it should not be enforced unless substantiated in every

particular." 2 Herman, Estoppel and Res Judicata §944. Generally speaking, the ground upon which an estoppel proceeds is fraud, actual or constructive, on the part of the person sought to be estopped. The fraud is said to consist in the denial of that which the person to be estopped had previously affirmed or asserted. *Ward* v. *Berkshire Life Ins. Co.* (1886), 108 Ind. 301; *Wisehart* v. *Hedrick* (1889), 118 Ind. 341; *Reid* v. *State, ex rel.* (1881), 74 Ind. 252.

The doctrine of estoppel springs from equitable principles, and is designed to aid the law in the administration of justice, where without its aid injustice might result. Its purpose is to preserve rights previously acquired, and not to create new ones. *Sherrick* v. *State, supra.*

There is in this case, however, no insistence by counsel for appellee that there was any misrepresentation, knowingly or otherwise, by the State, made through any of its duly authorized officials; but the argument is advanced by appellee that the State, with knowledge or notice that the Auditor of State was receiving from it and the other foreign insurance companies the taxes in question, and was paying them to the Treasurer of State, must be deemed to have acquiesced in his acts, and is estopped by its conduct of acquiescing therein from recovering the money in controversy of appellee.

Appellee, in order to maintain the estoppel which it urges against the State, seeks to bring home to the latter, through the biennial reports made by the Auditor of State, as shown, notice of the unauthorized acts of said auditor in collecting the money from the insurance companies.

It is charged that these reports disclosed that the several auditors had, from time to time, collected from all the foreign insurance companies, except five, the taxes due from them to the State, and that these several officials had credited themselves respectively with the payment of the money to the Treasurer of State. While it may be conceded—without deciding—that by virtue of these reports of the auditors, which were laid before the General Assembly by the several

Governors, the State may be held to be chargeable, through its legislative department, with notice of the unauthorized acts of said auditors, nevertheless, an essential element to constitute an estoppel by conduct is lacking, namely, that it does not appear that appellee at the time it paid the taxes to said auditor was not apprised that he was not authorized under the law to collect and receive these taxes. It is an undisputed proposition that in a case where a person seeking the benefit of an estoppel has knowledge or means of knowledge in respect to all the facts equal to that possessed by the one against whom the estoppel is urged, there can be no valid estoppel. *Reid* v. *State, ex rel., supra; Leonard* v. *American Ins. Co.* (1884), 97 Ind. 299; *Platter* v. *Board, etc.* (1885), 103 Ind. 360; *Silver, Burdett & Co.* v. *Indiana State Board, etc., supra,* and authorities cited.

In short, it may be said that we have a case before us in which neither misrepresentation nor concealment is charged against the State; neither do the facts show knowledge as to one of the parties and ignorance on the part of the other; consequently appellee is not in a position to invoke the principle of estoppel. It and the State were bound to know that the Auditor of State was not authorized by the statute to receive the money for the taxes. Hence, in respect to the question of knowledge or notice, the State and appellee may be said to have been on a parity with each other.

If appellee continued, as it appears it did, to pay the money due from it to the State as taxes to an officer unauthorized under the law to receive it, such payments were unwise, and if it were conceded that the State was apprised of the acts of the Auditor of State in accepting the money, it certainly, under the law, was not required to take any steps to protect appellee against its own folly, nor could it be expected to do so. Counsel argue that if appellee is required again to pay these taxes it will result in hardship and injustice. It never has paid said

taxes; for its payment to the Auditor of State, as we have shown, was not a payment to the State, and the position in which it is now placed, under the circumstances, must be attributed to its own fault in failing to comply with the plain requirements of the law. To sustain its contention, that it ought not to account to the State for the taxes in controversy, would be equivalent to offering an inducement to persons to rely upon their own voluntary ignorance in regard to their legal rights and duties, and would tend to break down the force and effect of the ancient maxim *ignorantia legis neminem excusat,* which applies alike to both common and statutory law.

By reason of the conclusions which we have reached, we dismiss, without consideration, the contention of the Attorney-General, that the State cannot be estopped by the laches or delays of its public officers. Upon this point, however, see the case of *Terre Haute, etc., R. Co.* v. *State, ex rel.* (1902), 159 Ind. 438.

We conclude, and so hold, that the facts alleged in the complaint do not constitute an estoppel against the State, and that appellee is not entitled to recover, under the first paragraph of its complaint, the principal money which it paid over to the State on December 11, 1906.

Counsel for appellee insist that whatever may be the law as to the right of the State to call upon appellee to pay the principal of the taxes in question, there can be no foundation upon which it can predicate any right to require it to pay interest on these taxes. We concur in this contention.

It will be observed that §10216 Burns 1908, Acts 1891 p. 199, §67, which imposes the taxes upon foreign insurance companies, and which, as previously shown, has formed a part of the general taxation law of this State since 1873, provides that " any such insurance company failing or refusing for more than thirty days to * * * pay the required

tax thereon shall forfeit $100 for each additional day * * * to be recovered in an action in the name of the State of Indiana on the relation of the Auditor of State."

It will be noted that neither this section nor any other part of our statute concerning taxation contains any provision for allowing interest upon taxes. This court has held that under the taxing law of 1891 interest is not authorized to be collected upon delinquent taxes. *Evansville, etc., R. Co. v. West* (1894), 139 Ind. 254; *Western Union Tel. Co. v. State* (1896), 146 Ind. 54; *Gallup v. Schmidt* (1900), 154 Ind. 196. Upon the same point is the holding in the case of *Morrow v. Geeting* (1899), 23 Ind. App. 494.

The same principle is affirmed and sustained in the following cases: *Western Union Tel. Co. v. State* (1881), 55 Tex. 314; *Shaw v. Peckett* (1854), 26 Vt. 482; *Perry v. Washburn* (1862), 20 Cal. 318; *Danforth v. Williams* (1812), 9 Mass. 324; *Kentucky Cent. R. Co. v. Pendleton Co.* (1886), 2 S. W. (Ky.) 176; *City of Camden v. Allen* (1857), 26 N. J. L. 398; *State v. Southwestern Railroad* (1883), 70 Ga. 11; *Perry County v. Selma, etc., R. Co.* (1880), 65 Ala. 391.

Taxes levied or imposed by the State are not debts in the ordinary acceptation of that term, so as to make them bear interest under the general interest laws of the State. In the absence of any express declaration by the legislature that taxes shall bear interest, the latter, as authorities affirm, should not be allowed. A tax made payable by a statute at a certain time does not bear interest unless the statute so provides. In support of these propositions see authorities just cited.

It is manifest, we think, that the State had no right to exact the payment of interest upon the principal sum of the unpaid taxes. It follows, therefore, that appellee is entitled, under the second paragraph of the complaint, to recover from the State the amount of interest that it is shown to have paid upon the principal. The manifest theory of the first paragraph of the complaint is to

recover the principal which appellee paid to the State on December 11, 1906; therefore, under our holding, this paragraph is insufficient, and the lower court erred in overruling the demurrer thereto.

Under our holding herein, there was no error on the part of the court in overruling the demurrer to the second paragraph of the complaint.

On account of the error of the court in overruling the demurrer to the first paragraph of the complaint the judgment is in part reversed; but so far as the judgment awards to appellee a recovery of the total amount of interest which it paid over to the State on December 11, 1906, it is in all things affirmed; and the cause is remanded to the lower court, with instructions to modify the judgment by eliminating therefrom all that part which embraces and awards to appellee a recovery of the principal amount of the taxes paid over by it to the State on December 11, 1906, and for further proceedings not inconsistent with this opinion.